AMBROSE *v.* DETROIT EDISON COMPANY.

MASTER AND SERVANT—BREACH OF EMPLOYMENT CONTRACT—EQUALLY DIVIDED COURT.

    Judgment for defendant on the pleadings in action for alleged breach of an employment contract is affirmed by an equally divided court.

Appeal from Wayne; Weideman (Carl M.), J. Submitted June 13, 1962. (Docket No. 43, Calendar No. 49,279.) Decided September 7, 1962. Rehearing denied November 5, 1962.

Case by Joseph S. Ambrose against the Detroit Edison Company, a foreign corporation, for breach of employment contract. Judgment for defendant on the pleadings. Plaintiff appeals. Affirmed by an equally divided court.

*Charles Burke,* for plaintiff.

*Armand D. Bove,* for plaintiff on application for rehearing.

*Leon R. Jones, Charles W. Staiger,* and *Fischer, Sprague, Franklin & Ford,* for defendant.

REFERENCES FOR POINTS IN HEADNOTE
3 Am Jur, Appeal and Error § 1160.

CARR, C. J. (*for affirmance*).   Plaintiff brought this action in circuit court to recover damages for breach of an alleged contract for employment.   Motion for judgment on the pleadings was submitted by defendant and was granted.   The trial judge in passing on the matter proceeded on the basis of facts well pleaded in plaintiff's amended declaration and on affirmative factual allegations in defendant's answer that were not controverted.   From the judgment entered, plaintiff has appealed.

The declaration alleged that in 1926 plaintiff was an employee of the Westinghouse Corporation in the city of Pittsburgh, Pennsylvania, that he was contacted by S. M. Dean, senior engineer of defendant's engineering division, and as a result of a subsequent interview he entered the employ of defendant on or about July 5, 1927.   Plaintiff claims in his pleading that he was assured by Mr. Dean that he would be given an opportunity for advancement, security of employment for the future, and that promises were made with reference to future retirement and insurance plans.   A retirement plan was formalized in April of 1943.

It further appears from the record before us that in 1947 defendant issued General Order 191 relating to the matter of disciplinary procedure.   Under date of July 7, 1958, said order was superseded by a revised order bearing the same number.   Plaintiff in the instant case relies on paragraph 14 of said order, which reads as follows:

"14. An employee will be discharged with notice when such factors as job performance, attitude, and ability, considered over a reasonable period of time have shown that it is in the best interest of the company and fair to the employee to terminate employment.   In these cases, the amount of notice and pay will depend upon the circumstances."

At the time of the issuance of the order on July 7, 1958, plaintiff was on leave of absence with pay. He returned on October 1st, at which time he was discharged. He was at the time earning $1,100 per month. It is his claim in substance that paragraph 14, above quoted, constituted a part of his contract of employment and that the discharge was not fair to him.

It was the claim of the defendant as set forth in its answer filed in circuit court that Mr. Dean, with whom plaintiff alleged his original agreement for employment was made, deceased in 1949, that the details of the conversation between him and plaintiff prior to employment of the latter were not within the knowledge of any other living agent, representative, or employee of the defendant, and that, in consequence, plaintiff was necessarily precluded from testifying to the conversation claimed.* It was further asserted that the employment was subject to termination at the will of either party, that the general order, on paragraph 14 of which plaintiff relies, related, as indicated by its title, solely to the matter of discipline by suspension or discharge or otherwise, and that it did not have a contractual status. The trial judge, in a carefully considered opinion, agreed with defendant's contention and concluded that there was merely employment which plaintiff was entitled to terminate at any time and from which defendant was entitled to discharge plaintiff if it wished to do so.

Our analysis of the record brings us to the conclusion that the trial judge was not in error in granting the motion for judgment on the pleadings. The declaration filed by plaintiff did not allege that Mr. Dean was authorized to bind defendant by the promises that he is claimed to have made. Neither

* See CL 1948, § 617.65 (Stat Ann § 27.914).—Reporter.

is there any factual showing on which to base a conclusion that as an employee of the engineering division of defendant he was authorized to make special contracts with employees, or that he was held out as having such authority. So far as appears from the pleadings there is no showing that the board of directors or other officers of the company had any knowledge whatever as to the promises and assurances claimed to have been made by Mr. Dean.

It is apparently plaintiff's theory that his original hiring was to continue until he reached an age at which he might retire with such benefits as should accrue to him at the time. If such was the nature of the understanding between himself and Mr. Dean, obviously the agreement made was one not to be performed within a year and there being no written contract, or memorandum in writing, it was void under the pertinent provision of the statute of frauds relating to oral agreements not to be performed in 1 year from the making thereof (CL 1948, § 566.132 [Stat Ann 1953 Rev § 26.922]). *Commercial Factors Corporation* v. *Zephyr Awning Corporation,* 353 Mich 251.

As indicated, plaintiff in his declaration appears to rely in part at least on his claimed arrangement with Mr. Dean. The statement of questions involved on the appeal as set forth in the brief of counsel for plaintiff also suggests such reliance. However, we find in the brief the statement that:

"Plaintiff contends that General Order No. 191 is the basis for his cause of action and any reference by the court to the conversations plaintiff had with Mr. Dean is immaterial and irrelevant."

It would appear, therefore, that we are primarily concerned at this time with the application of the General Order referred to and particularly with paragraph 14 thereof, above quoted. It should be noted

that plaintiff in count 2 of his amended declaration asserts that defendant and its agents through acts, representations, written orders, and statements (none of which are specified) induced plaintiff to believe that he was to have security with defendant company. It is further asserted that plaintiff relied on such statements to his detriment and prejudice, but there is no showing as to the nature of the detriment sustained.

Paragraph 14 of General Order No. 191 as adopted July 7, 1958, must be interpreted in the light of the purpose of such order and in connection with other provisions thereof. As before noted, the general subject of the order is "disciplinary procedure." It indicates the necessity therefor in certain cases and specifies the different actions that may be taken, including oral warnings, written warnings, suspensions, and discharge. Paragraph 13 declares that:

"13. A discharge may be either immediate or with notice. In cases of deliberate or serious violation of any of the recognized standards of good conduct on the job, whether listed in the examples which follow or not, and where there is no question about the facts, discharge should be immediate. An employee who is immediately discharged will, nevertheless, be allowed pay to the end of the work day."

The order further gave to an employee who might feel that he had been unjustly disciplined the right of appeal to higher management. Plaintiff in this case availed himself of that remedy and his appeal was heard before 3 representatives of defendant company holding equal rank with the supervisor who had discharged him. The result of the hearing was that the order of discharge was sustained. The question naturally follows whether plaintiff is entitled to have submitted to a jury for determination whether his discharge was "fair." We think that

such question must be answered in the negative. General Order No. 191 construed in the light of its purpose clearly recognizes the right of the employer to discipline an employee, including the discharge thereof. The discharge is authorized if the employer concludes that such action is necessary and proper. As incident thereto the employee, if he desires, may pursue his right of appeal to the president of the company and obtain a hearing of the character granted in the present case. Affording such remedy was, of course, in the interest of the employee and is clearly indicative of an attempt by General Order No. 191 to give finality to defendant's acts. It is generally held that an agreement for so-called permanent employment is actually one for an indefinite period, and that such employment is subject to termination at the will of either party. *Sullivan* v. *Detroit, Ypsilanti & Ann Arbor Railway,* 135 Mich 661, 673 (64 LRA 673, 106 Am St Rep 403); *Lynas* v. *Maxwell Farms,* 279 Mich 684; *Adolph* v. *Cookware Company of America,* 283 Mich 561, 568.

Insofar as claimed retirement rights are concerned, attention is directed to a provision of section 7, paragraph 2, of the plan adopted by defendant, providing in substance that the board of directors might terminate the plan at any time. Paragraph 3 of said section further declares that:

"3. The establishment of the plan shall not be construed as conferring any legal rights upon any employee or any person for a continuation of employment, nor shall it interfere with the rights of the company to discharge any employee and to treat him without regard to the effect which such treatment might have upon him as a participant of the plan."

Inasmuch as plaintiff's employment ended before he reached the age of retirement, and was rightfully terminated, he has no claim for damages based on the

theory of loss of retirement benefits. It must be said also that his rights in the group insurance policy maintained by defendant terminated with his employment except, as pointed out by defendant, he had the right to convert to an individual policy. He did not choose to avail himself of that privilege.

On the basis of the record before us we conclude that defendant was entitled to judgment on the pleadings, and such judgment is affirmed.

DETHMERS, KELLY, and ADAMS, JJ., concurred with CARR, C. J.

BLACK, J. (*for reversal*). This is another case where the defendant would move the plaintiff out of court, summarily and with prejudice, on gratuitous assumption that the latter has no proof, and will be able before trial to obtain no proof, with which to support the well-pleaded allegations of his declaration. The moving party's present position is weak in that it moves for final judgment solely on strength of the pleadings, absent any semblance of support of its legal position by affidavit or testimony as is required when motion to dismiss or motion for summary judgment is presented under Court Rule No 18 or Court Rule No 30 (1945).

Aside from the above, my principal objection to Chief Justice CARR's opinion is that my Brothers presurmise with the circuit judge that plaintiff will turn out to be an incompetent witness at trial and, proceeding from that not yet valid assumption, conclude that plaintiff will not be able to adduce competent proof supporting such allegations. My answer is that the competence of a person to testify, under the opposite party statute (CL 1948, § 617.65 [Stat Ann § 27.914]), is determinable when and only when that person is "examined as a witness in his own behalf." This plaintiff has never been sworn, and so we again

determine an evidentiary question before trial which, upon trial, may never arise depending (for one thing apart from others) on the last minute tactical decision of defendant to object or waive objection, or to put upon the stand some witness whose testimony may open the statutory door. Finally, the defendant made no point of, and definitely did not rely upon, any claim that plaintiff would be an incompetent witness. Here are all of the reasons specified by it in the motion for judgment Chief Justice CARR has approved:

"1. Plaintiff has failed to allege more than a contract of employment at the will of the defendant which could be terminated at any time by the defendant, with or without cause.

"2. The plaintiff was discharged with ample cause.

"3. The contract of employment attempted to be alleged in the pleadings is void under the statute of frauds.

"4. Plaintiff voluntarily failed and neglected to convert life insurance rights he possessed under defendant's group life insurance program and any damages resulting to plaintiff therefrom are the result of his said failure to convert.

"5. Any claim by plaintiff for damages under defendant's pension plan is premature at this time."

I oppose this convenient practice of throwing a case out of court before the suitor is given that genuine day in court which, by means of solemnly issued statements and trumpeted hosannahs, we do proclaim for him each year on Law Day. The only alleged excuse for the practice is that the steadily developing litigatory load on our courts requires a sort of automated justice and that the honored tradition of fair and full trial no longer can be handled—as of yore—by today's judicial manpower. Mere utterance thereof exposes the malignant error both of practice and excuse.

Plaintiff's right to trial is subject to be cut off only upon motion made under either of the aforesaid court rules. Then, possibly, the conclusion reached by the court might receive that deposed and requisite support which so far is wanting of record. Let the defendant, by the opening paragraph of its brief-presented counterstatement, declare the facts upon which these cautionary sentiments are expressed (quotation from pages 1 and 2 of defendant's brief):

"We recognize that this is an appeal from a judgment on the pleadings entered in favor of the defendant, on motion for such judgment, and that in such a case, the court must assume that all of the well-pleaded allegations of the plaintiff's declaration are true. However, in accepting this assumption, we trust this Court will not ignore the fact that defendant has pleaded a good and meritorious defense in this case."

When the parties are agreed that a plaintiff has filed a "well-pleaded" declaration and that the defendant has "pleaded a good and meritorious defense," the result is a triable issue, resolution of which should be made by a trial, or, if before trial, only upon motion presented under either of said court rules. To this I must add that even though plaintiff's case may appear weak, that conclusion provides no reason for rushing him from the courtroom, particularly upon motion to the pleadings.

I would reverse and remand for entry of order denying defendant's said motion.

KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred with BLACK, J.